SC:CAO
F.# 2012R00519

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 26 2013 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

ALEXANDER SWANSON,

              Defendant.

I N F O R M A T I O N

Cr. No. _____
(T. 18, U.S.C., §§
981(a)(1)(C), 1343, 2 and
3551 et seq.; T. 21,
U.S.C., § 853(p); T. 28,
U.S.C., § 2461(c))

- - - - - - - - - - - - - - - - -X

THE UNITED STATES ATTORNEY CHARGES:

### INTRODUCTION

At all times relevant to this information:

I. **Background**

1. In or about and between 2003 and 2007 the defendant ALEXANDER SWANSON worked for Fisher Investments ("Fisher"). Fisher was a limited liability corporation located in Woodside, California that provided independent investment advice to both individual and institutional investors.

2. In or about and between 2007 and 2010, the defendant ALEXANDER SWANSON worked for Horan Capital Management ("Horan"). Horan was a limited liability corporation located in Baltimore, Maryland that provided independent investment advice

to both individual and institutional investors.  In 2010, SWANSON returned to work at Fisher.

3.  At all times relevant to this information, Fisher and Horan tasked the defendant ALEXANDER SWANSON, a regional sales representative, with recruiting new clients in the Long Island and New York City area to use the services provided by Fisher and Horan's actual investment advisers.  SWANSON did not ever work as a stockbroker or investment adviser at either Fisher or Horan.

4.  Despite working as a regional sale representative, the defendant ALEXANDER SWANSON falsely promoted himself as a stockbroker and investment manager.  SWANSON misrepresented his job, background and investment experience to Jane Doe #1, Jane Doe #2, John Doe #1 and others (collectively, the "Victims").  These misrepresentations fraudulently caused the Victims to invest with SWANSON, who took portions of the money for his own purposes, including sports gambling, and caused approximately $3,139,477.59 in losses to his victims.

II. The Schemes

A.  Investment Manager to Jane Doe #1

5.  Jane Doe #1, an individual whose identity is known to the United States Attorney, lived in Bordentown, New Jersey.

6. In or about and between 2004 and 2010, Jane Doe #1 opened an account with Horan to manage her retirement savings. During this time, Jane Doe #1 became acquainted with the defendant ALEXANDER SWANSON, whom she knew to be a Horan employee.

7. The defendant ALEXANDER SWANSON falsely told Jane Doe #1 that he was a Horan investment manager and that he had a history of success providing investment advice. SWANSON further told Jane Doe #1 that he was starting his own investment management business. In reliance upon the false statements, in or about May 2011, Jane Doe #1 closed her Horan accounts, gave SWANSON investment control over her approximately $700,000 in retirement funds and wrote SWANSON a check for approximately $400,000.

8. Beginning on or about May 11, 2011, the defendant ALEXANDER SWANSON took a portion of Jane Doe #1's misappropriated funds and spent them for his own personal benefit. On or about July 31, 2011, the defendant SWANSON depleted Jane Doe #1's retirement funds from more than $1,100,000 to approximately $196.14.

B.  <u>Investment Manager to Jane Doe #2</u>

9. Jane Doe #2, an individual whose identity is known to the United States Attorney, was a retiree who lived in New York, New York.

10. In the summer of 2011, the defendant ALEXANDER SWANSON visited Jane Doe #2's home to sell Fisher's investment management services to her. SWANSON falsely told Jane Doe #2 that he was a Fisher investment manager and that he had a history of success providing investment advice. SWANSON further told Jane Doe #2 that he was starting his own investment management business. In reliance upon the false statements, Jane Doe #2 gave SWANSON, not Fisher, investment control over her retirement funds, which totaled approximately $750,000.

11. In or about and between December 2011 and January 2012, the defendant ALEXANDER SWANSON withdrew portions of Jane Doe #2's investment funds for his own personal benefit. On or about March 30, 2012, SWANSON reduced Jane Doe #2's retirement funds from approximately $750,000 to approximately $32.38.

C. Investment Manager to John Doe #1

12. John Doe #1, an individual whose identity is known to the United States Attorney, lived in East Northport, New York.

13. In or about and between winter 2008 and fall 2010, John Doe #1 knew the defendant ALEXANDER SWANSON as a Horan employee. In September 2010, the defendant ALEXANDER SWANSON told John Doe #1 that he was leaving Horan, but that he had new investment opportunities called the Stellar Fund and Nichalex. In order to gain access to John Doe #1's money,

4

SWANSON showed him several years of falsified performance results for the Stellar Fund.

14.  On or about April 14, 2011, the defendant ALEXANDER SWANSON sent an email to John Doe #1 from SWANSON's gmail account. That email directed John Doe #1 to a website and provided a password for access. SWANSON created the website to falsely report to John Doe #1 that the Stellar Fund earned approximately $35 million in profits in the previous two years. In reliance upon SWANSON's false representations, John Doe # 1 agreed to invest in Stellar Fund. In total, John Doe #1 entrusted approximately $1,100,000 to SWANSON. SWANSON withdrew portions of John Doe #1's investment funds for his own personal benefit and eventually reduced the amount of investment capital to nearly zero.

COUNTS ONE through THREE
(Wire Fraud)

15.  The allegations contained in paragraphs One through Fourteen are realleged and incorporated as though fully set forth in this paragraph.

16.  On or about and between September 1, 2010 and December 5, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ALEXANDER SWANSON did knowingly and intentionally devise a scheme and artifice to defraud the Victims, and to

obtain money and property from the Victims by means of materially false and fraudulent pretenses, representations and promises.

17. On or about the dates identified below, for the purpose of executing such scheme and artifice, the defendant ALEXANDER SWANSON did transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, one or more writings, signs, signals, pictures and sounds, as described below:

| Count | Approximate Date | Description | Wire Origin | Wire Destination |
|---|---|---|---|---|
| ONE | April 14, 2011 | Email to John Doe #1 | California | New York |
| TWO | May 27, 2011 | Jane Doe #1 Transfer of $400,000 | New Jersey | New York |
| THREE | December 5, 2011 | Jane Doe #2 Transfer of $200,000 | Florida | New York |

(Title 18, United States Code, Section 1343, 2 and 3551 et seq.)

## FORFEITURE ALLEGATION

18. The allegations contained in paragraphs One through Fourteen are realleged and incorporated as though fully set forth in this paragraph.

19. The United States hereby gives notice to the defendant that, upon his conviction of any of the offenses charged in Counts One through Three, the government will seek

6

forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(c) and Title 28, United States Code Section 2461(c), of any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses, including but not limited to, an amount of three million, one hundred and thirty-nine thousand, four hundred and seventy-seven dollars and fifty-nine cents ($3,139,477.59), a sum of money representing the approximate amount of proceeds obtained as a result of the offenses.

20. If any of the above-described forfeitable property, as a result of any act or omission by the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property, which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c)(1), to seek forfeiture of

any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 28, United States Code, Section 2461(c); Title 18 United States Code, Section 981(a)(1)(c); Title 21, United States Code, Section 853(p))

*/s/ Loretta E. Lynch*
LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK