

Gottlieb & Gordon LLP
Trinity Building
111 Broadway, Suite 701
New York, NY 10006
Tel: (212) 566-7766 · Fax: (212) 374-1506
www.gottliebgordon.com
New York · London · Rome

Robert C. Gottlieb, Partner
Celia A. Gordon, Partner

Justin F. Heinrich, Counsel
Derrelle M. Janey, Counsel
Mendy M. Piekarski, Associate
Ravi Kantha, Associate

September 22, 2014

**VIA EMAIL AND OVERNIGHT DELIVERY**
Linda Fowle
Senior United States Probation Officer
United States Probation
Eastern District of New York
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722

      Re:    *UNITED STATES OF AMERICA V. ALEXANDER SWANSON*,
               DOCKET NO.: 13 CR 00221-001

Dear Officer Fowle:

This law firm represents Alexander Swanson in the above-captioned matter. We have the following objections and corrections to the Presentence Investigation Report ("PSR") dated October 17, 2013:

**¶ 8:**

Although Mr. Swanson was not employed as a stockbroker or investment advisor at either Horan Capital Management or Fisher Investments, he did successfully pass the Series 65 license – the Uniform Investment Adviser Law Examination – on March 6, 2004. So, to the extent Mr. Swanson described himself as an investment adviser, he was making a statement based in fact.

¶ 10:

Losses in Jane Doe #2's investment account occurred primarily through unauthorized trades in her account where Mr. Swanson, in effect, used her money to make bets in the stock market. It should also be noted that Bank of America debited an account controlled by Mr. Swanson to return $115,000 of the monies lost by Jane Doe #2.

¶ 11:

John Doe #1 did not entrust Mr. Swanson with $1.1MM. As reflected in the settlement agreement between Mr. Swanson and John Doe #1, John Doe #1 invested $680,000 with Mr. Swanson. Interest and penalties in the amount of $318,168.49, together with the investment, amount to $998,168.49.

¶ 13:

It is not true that two of the victims were senile. Jane Doe #1 (Margaret Vasily) lived alone; however, she drove daily and is believed to have performed a variety of daily activities that would be impossible for a "senile" person. The same is the case with respect to Jane Doe # 2 (Roberta Hodes). Additionally, the foreign-born victim (John Doe #1) did not suffer from a substantial language barrier. He manages a successful import/export business in Long Island, New York and supervises hundreds of local employees.

¶ 14:

Mr. Swanson made restitution (or returned funds) to the victims in the following amounts: $155,000 plus $45,000 to Jane Doe #1, and approximately $175,000 to John Doe #1.

¶ 15:

With respect to Count 1 (Jane Doe #1), the restitution amount is **$505,708.25** (as opposed to $952,708.25). The basis for this objection is the following. The Government's restitution starting point was $1,107,708.25, which constituted the $707,708.25 in Jane Doe #1's brokerage account plus a $400,000 check Jane Doe #1 wrote to Mr. Swanson. The Government then deducted a $155,000 payment Mr. Swanson returned to Jane Doe #1. Thus, the Government's restitution amount for Jane Doe #1 was $952,708.25. However, the Government has since consented that the $400,000 check ought to be inclusive within the $707,708.25 in Jane Doe #1's brokerage account. Accordingly, this reduces the restitution amount to $552,708.25. Additionally, Mr. Swanson returned $45,000 to Jane Doe #1 during the period of control. See the wire transfer documentation attached hereto as **Exhibit A**. Accordingly, the restitution amount is further reduced to $505,708.25.

Gottlieb & Gordon LLP · Trinity Building · 111 Broadway, Suite 701 · New York, NY 10006 · Tel: (212) 566-7766 · Fax: (212) 374-1506 · www.gottliebgordon.com

With respect to Count 2 (Jane Doe #2), the restitution amount is **$216,581.57** (as opposed to $731,769.34). The basis for this objection is the following. The Government's restitution starting amount is $731,769.34. Bank of America debited an account owned by Mr. Swanson for the purpose of refunding Jane Doe #2. See January 2012 Bank of America statement attached hereto as **Exhibit B**. Accordingly, this transaction alone lowers the restitution amount to $616,581.57. In addition, Mr. Swanson believes that approximately $400,000 was transferred to Jane Doe #2's new broker during the period of Mr. Swanson's control. We have requested that the Government provide us with certain materials to allow Mr. Swanson to corroborate this contention, but have not yet been provided the requested materials. This $400,000 transfer reduces the restitution amount to $216,581.57.

With respect to Count 3 (John Doe #1), the restitution amount is **$823,168.49** (as opposed to $1,000,000). John Doe #1 instituted a civil lawsuit against Mr. Swanson in the Eastern District of New York. The Court in that action ordered that Mr. Swanson pay restitution to John Doe #1 in the amount of $998,168.49 (representing $680,000 of losses plus $318,168.49 in interest and penalties). In accordance with the Court's order, Mr. Swanson has repaid approximately $100,000 to John Doe #1. Accordingly, the restitution amount is reduced to $898,168.49.

¶ 46:

Mr. Swanson's mother depends on him financially and she does not receive financial contribution from her deceased husband's pension. Mr. Swanson's mother does not have contact with her other children.

¶ 47:

Mr. Swanson did not meet his biological mother nor his other siblings until approximately 2010, as opposed to 2004.

¶ 48:

Mr. Swanson met his three maternal half-siblings in 2010, as opposed to 2004.

¶ 49:

Mr. and Mrs. Swanson married on November 21, 1993, as opposed to June 14, 1993. Mrs. Swanson received a bachelor's degree from New York's Fashion Institute of Technology; however, Mrs. Swanson has not been employed since the oldest son was born in 1995. Moreover, Mrs. Swanson does not perform "occasional work as a designer." She is unemployed.

¶ 51:

The ages of the Swanson children are as follows: Alexander Swanson is 19 years old and recently transferred from Sacred Heart University in Connecticut to the University of New Hampshire; Nicholas Swanson is 16 years old; and Jack Swanson recently celebrated his 14th birthday and is in the 9th grade.

¶ 56:

Mr. Swanson began suffering from incapacitating headaches in early 2008 (as opposed to 2004) that resulted in him undergoing brain surgery on May 25, 2008. Additionally, Mr. Swanson's primary care physician was Harvey Lerner (not Mare Allen) who referred Mr. Swanson to neurologist Arjen Keuskamp who recommended that Mr. Swanson undergo a MRI test (not CAT scan).

¶ 60:

With respect to Mr. Swanson's diagnosis for depression and anxiety, he was first treated for depression in 2010 by Dr. Jafar Kolahifar. Mr. Swanson was again diagnosed in January 2012 after enrolling at the Pederson Krag Clinic in Huntington. Mr. Swanson never enrolled in a program in Smithtown.

¶ 71:

Mr. Swanson's title was Vice President of Sales rather than Vice President of Sales in New York/New Jersey.

¶ 78:

Mr. Swanson's total monthly income is $7,077 (as opposed to $9,700) derived from the following:

| | |
|---|---|
| Long Term Disability (Fisher Investment Policy): | $3,780 |
| Social Security Disability (SELF): | $2,163 |
| Social Security (Spouse & children): | $1,134 |

¶ 82:

Contrary to the case agent's information, most of the money in the underlying offense was lost through trades in the stock market as opposed to "sports betting."

¶ 96:

With respect to Count 1 (Jane Doe #1), the restitution amount is **$505,708.25** (as opposed to $952,708.25). The basis for this objection is the following. The Government's restitution starting point was $1,107,708.25, which constituted the $707,708.25 in Jane Doe #1's brokerage account plus a $400,000 check Jane Doe #1 wrote to Mr. Swanson. The Government then deducted a $155,000 payment Mr. Swanson returned to Jane Doe #1. Thus, the Government's restitution amount for Jane Doe #1 was $952,708.25. However, the Government has since consented that the $400,000 check ought to be inclusive within the $707,708.25 in Jane Doe #1's brokerage account. Accordingly, this reduces the restitution amount to $552,708.25. Additionally, Mr. Swanson returned $45,000 to Jane Doe #1 during the period of control. See the wire transfer documentation attached hereto as **Exhibit A**. Accordingly, the restitution amount is further reduced to $505,708.25.

With respect to Count 2 (Jane Doe #2), the restitution amount is **$216,581.57** (as opposed to $731,769.34). The basis for this objection is the following. The Government's restitution starting amount is $731,769.34. Bank of America debited an account owned by Mr. Swanson for the purpose of refunding Jane Doe #2. See January 2012 Bank of America statement attached hereto as **Exhibit B**. Accordingly, this transaction alone lowers the restitution amount to $616,581.57. In addition, Mr. Swanson believes that approximately $400,000 was transferred to Jane Doe #2's new broker during the period of Mr. Swanson's control. We have requested that the Government provide us with certain materials to allow Mr. Swanson to corroborate this contention, but have not yet been provided the requested materials. This $400,000 transfer reduces the restitution amount to $216,581.57.

With respect to Count 3 (John Doe #1), the restitution amount is **$823,168.49** (as opposed to $1,000,000). John Doe #1 instituted a civil lawsuit against Mr. Swanson in the Eastern District of New York. The Court in that action ordered that Mr. Swanson pay restitution to John Doe #1 in the amount of $998,168.49 (representing $680,000 of losses plus $318,168.49 in interest and penalties). In accordance with the Court's order, Mr. Swanson has repaid approximately $175,000 to John Doe #1. Accordingly, the restitution amount is reduced to $823,168.49.

Please do not hesitate to contact me with any questions. Thank you for your consideration.

Sincerely,

Gottlieb & Gordon LLP

By: _____
Derrelle M. Janey

cc: Christopher A. Ott, Assistant U.S. Attorney (via email and overnight delivery)

Gottlieb & Gordon LLP · Trinity Building · 111 Broadway, Suite 701 · New York, NY 10006 · Tel: (212) 566-7766 · Fax: (212) 374-1506 · www.gottliebgordon.com